UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHARLES SHATTUCK,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        No. 4:24-CV-00336 HEA
                                     )
JASON LEWIS, et al.,                 )
                                     )
            Defendants.              )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Charles Shattuck, an inmate at Potosi Correctional Center (PCC), for leave to commence this civil action without prepaying fees or costs. [ECF No. 2] The Court grants the motion and assesses an initial partial filing fee of $43.07. Additionally, the Court will issue process on plaintiff's claims for excessive force in violation of the Eighth Amendment and retaliation under the First Amendment and denies without prejudice his motion for appointment of counsel and motion for temporary restraining order. All other claims and defendants are subject to dismissal.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid.  *Id.*

A review of plaintiff's account from the relevant six-month period indicates an average monthly deposit of $40.83 and an average monthly balance of $215.36. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $43.07, which is 20 percent of plaintiff's average monthly balance.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within

the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint and Accompanying Exhibits

Plaintiff filed the instant action on a Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff names thirteen (11) individuals as defendants in this action: (1) Jason Lewis (Deputy Division Director); (2) Unknown Correctional Officer (Badge No. 36308); (3) Brian Davis (Functional Unit Manager); (4) Perry Arnold (Correctional Officer); (5) Unknown Paine (Correctional Officer); (6) Colean Upton[1] (Correctional Officer); (7) Unknown Montgomery (Correctional Officer); (8) Unknown Dean (Correctional Officer); (9) Lindsey Ramsey (Case Manager); (10) Unknown Williams (Correctional Officer); and (11) Unknown John/Jane Doe (Correctional Officer). Plaintiff brings this action against defendants in their official and individual capacities. At all relevant times to this action, plaintiff indicates he was confined at PCC, and he claims that the events in the complaint occurred at PCC.

Although plaintiff filled out the Prisoner Civil Rights Complaint form, he attached over twenty (20) handwritten pages to his complaint to suffice as his "Statement of Claim." Plaintiff's handwriting is small and difficult to read.

---

[1]Plaintiff identifies defendant Upton's first name as Colean in his "Motion for Temporary Restraining Order." *See* ECF No. 6. The Court will instruct the Clerk to update the docket accordingly.

Plaintiff asserts that he is a transgendered individual who previously acted as a jailhouse lawyer for his transgendered cellmate, Dustin Combs. *See Combs v. Downing*, No. 4:22-CV-786 PLC (E.D.Mo.). [ECF No. 1 at 7]. Combs, who plaintiff also refers to as "Harley Quinn" in the complaint, and plaintiff, were celled together in Administrative Segregation (Ad-Seg); however, he asserts that when they were going to be released from Ad-Seg, sometime in July of 2022, defendant Brian Davis separated the two inmates because Davis believed they were in an unauthorized relationship. *Id.* at 8. Plaintiff claims that not only did he write the pleadings and motions on behalf of Combs in his lawsuit in this Court, but he also wrote the Institutional Resolution Request (IRR), Grievance and Grievance Response for Combs against Davis and Davis' subordinate, Perry Arnold. *Id.* at 12-13.

On or about August 5, 2022, plaintiff had an anxiety attack, consisting of chest pains and shortness of breath, while in his cell at PCC. He "popped the emergency button," and he was released to medical by an unnamed bubble officer. *Id.* An unnamed nurse in medical took plaintiff's vitals, which appeared to be fine, speculated that perhaps he had a pulled muscle, and provided him with Ibuprofen. Plaintiff was then released back to his housing unit. He asserts that Correctional Officer Paine cuffed him to escort him to a security bench in the Ad-Seg Unit. Although Paine initially left, he came back a few minutes later to ask if plaintiff needed Protective Custody. Plaintiff said no, and Paine left again. *Id.*

Approximately fifteen (15) minutes later, Paine came back with a conduct violation (CDV) for plaintiff claiming plaintiff had been observed to be "under the influence." *Id.* at 9. Paine said plaintiff would be single-celled in Housing Unit 1. Plaintiff protests that he had evidence that he was not "under the influence" because a medical professional had found him "medically sound" just minutes before being given the CDV. *Id.*

4

Paine escorted plaintiff to Housing Unit 1. *Id*. at 9. However, on the way there, with his hands cuffed behind his back, plaintiff felt "excruciating pain" and dropped down. Paine pepper sprayed plaintiff directly into his eyes after plaintiff apparently dropped to the ground; although he states that he was not struggling or resisting but was instead having a medical emergency. *Id*. Plaintiff alleges that "Paine and his subordinate officers physically carried [him]" to Housing Unit 1 and placed him in a suicide cell. *Id*. Plaintiff was stripped naked, backed up to the food port, and he had a tether attached to his wrist restraints which was run to the outside of the door. He was told that he would remain in the cell with no property on suicide watch. *Id*. Plaintiff does not indicate with specificity which of the defendants placed him in the suicide cell and ran the tether. He mentions only that defendant Paine and his "subordinates" placed him at the suicide cell and left him there. *Id*.

Plaintiff alleges that he placed the long leather strap around his neck and dropped to his knees and "slip[ed] into unconsciousness," with his hands cuffed behind his back. *Id*. at 9-10. Although plaintiff's complaint is not entirely clear, it appears that he blames defendants Paine, Unknown Montgomery and Unknown Dean for failing to protect him from himself, because they walked away from him while he was on suicide watch. *Id*. at 14-15. Plaintiff does not allege that he was suicidal at the time he was placed on suicide watch. Plaintiff's claims are conclusory and difficult to discern.

After defendants became aware that plaintiff attempted suicide, he was pepper sprayed again. *Id*. Although he claims that he cannot state for certain, he believes Correctional Officer Unknown Dean was the correctional officer that pepper sprayed him. *Id*. at 10. After plaintiff was pepper sprayed, his cell door opened and while still restrained with his hands behind his back, several officers entered his cell. Plaintiff lists the officers as: Correctional Officer Perry Arnold,

Correctional Officer Upton, Correctional Officer Montgomery and Correctional Officer Dean. *Id.* The leather cord was removed from plaintiff's neck, and he was purportedly shoved between the wall and the toilet. Plaintiff states that this was when the "attack" began. *Id.* He claims that he was punched repeatedly by defendants Arnold, Paine, Upton, Montgomery and Dean while his hands were still cuffed behind his back. Allegedly defendant Arnold kept stating, "like to file suit, huh. . ." and Paine was allegedly laughing and stating, "This is how we treat jailhouse lawyers around here." *Id.*

Plaintiff claims he was eventually pulled out from the side of the toilet and placed in the middle of the cell floor while pinned to the ground. *Id.* Defendant Arnold purportedly pinned his down while shoving his knee into plaintiff's back. *Id.* Plaintiff claims he passed out from lack of oxygen. He states that eventually he became "submissive," and he was allowed to place his hands in the food port to have his wrist restraints removed. *Id.* at 11. He claims that defendant Williams tried to break his finger when he did so by bending it backwards, so he jerked his hands (and cuffs) back into the cell. *Id.*

Plaintiff alleges that Arnold, Dean, Upton, Montgomery and Paine acted with retaliation against him when they used excessive force against him on August 9, 2022. *Id.* at 12-15. Plaintiff believes defendants acted against him in retaliation for plaintiff's previous acts in preparing legal paperwork for his prior cellmate, Combs. *Id.* at 12-14.

Nurse Nikki came to plaintiff's cell for a "use of force assessment" after the altercation, and plaintiff informed her that he believed his hip was broken. Nurse Nikki allegedly told plaintiff that Officer Upton reported that he may have injured plaintiff's leg during the use of force. *Id.* Plaintiff states that he has had to receive steroid shots in his SI joint for the past several months as a result of the injury. *Id.*

The next day, August 6, 2022, plaintiff was removed from his cell and taken to the body scanner because unnamed staff believed he had swallowed a razor blade. Plaintiff was also taken to medical where he allegedly told an unnamed medical official that the only reason he could think of for a person to swallow a razor blade was if they wanted to die. Subsequently he was taken to the hospital for X-rays, but no razor blade was found. *Id.*

Plaintiff was released from suicide watch on August 9, 2022, and he was taken to a different suicide cell, 2B-1B. *Id.* at 12. On August 11, 2022, plaintiff claims that Case Manager Lindsey Ramsey came to his cell to hold a CDV hearing relating to the Rule 11.5 and 19.4 infractions he received on August 5, 2022. *Id.* at 13. Plaintiff alleges that he was found guilty of the infractions, and he immediately filed an appeal of the findings.

Plaintiff seeks monetary damages and injunctive relief.

### Discussion

**A. Official Capacity Claims**

Plaintiff sues all defendants in their official capacities. Plaintiff's official capacity claims must be dismissed because a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, all defendants appear to be employees of the Missouri Department of Corrections and, therefore, are employees of the State of Missouri. Plaintiff cannot bring a claim

7

for damages against the State of Missouri under 42 U.S.C. § 1983 because the state is not a "person." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (asserting that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"). Furthermore, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

### B. Plaintiff's Individual Capacity Claims

### 1. Plaintiff's Allegations Against Supervisory Staff Jason Lewis and Brian Davis

Plaintiff's allegations fail to state a claim upon which relief may be granted against the Supervisory Staff, Jason Lewis and Brian Davis. To state a claim under § 1983, plaintiff must plead that a government official has personally violated his constitutional rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676); *see also Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983). In requiring a plaintiff to allege facts showing each defendant's personal involvement in the deprivation of his constitutional rights, the Court assesses each defendant relative to his or her authority over the claimed constitutional violation. *Jackson*, 747 F.3d at 543. A person with a supervisory or administrative position may be liable only if his or her direct action or failure to supervise and train the offending employee caused the constitutional violation. *Id.* (citations omitted). Such person's personal involvement can also be established by allegations that he or she was directly involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Id.* (citations omitted).

Plaintiff's complaint is silent as to any specific allegations against defendants Jason Lewis or Brian Davis. Plaintiff does not identify that these individuals, who are alleged to be supervisors

8

at the Missouri Department of Corrections and PCC, respectively, had any personal involvement with the alleged constitutional violations. The Court will not assume facts that plaintiff has not alleged. *See Stone*, 364 F.3d at 914-15. Plaintiff's failure to allege facts tending to demonstrate these defendants' personal involvement indicates that plaintiff seeks to bring claims premised entirely upon respondeat superior. Such claims are not cognizable in § 1983 actions and must be dismissed. *See Boyd*, 47 F.3d at 968.

**2.  Plaintiff's Allegations Against Defendant Unknown Badge #36308 and John/Jane Doe Defendant**

Plaintiff fails to state a claim against defendant Unknown Badge #36308 and John/Jane Doe defendants because the complaint is devoid of any allegations related to their conduct. Plaintiff fails to allege facts that show how any of these defendants are causally linked to, and directly responsible for, violating his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights). Plaintiff merely lists these individuals as defendants without alleging, with any specificity, that they did anything to violate his rights. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of a self-represented complaint against defendants who were merely listed as defendants in the caption and there were no allegations of constitutional harm against them).

In addition, the complaint contains no information about these defendants that would permit the identity of the specific individuals to be ascertained.[2] An action may only proceed against a party who is unnamed if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). In this case, unknown or John/Jane Doe defendants are both unidentified and indeterminate in number. This is not permissible. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" is not permissible).

### 3. Plaintiff's Excessive Force Claims

Plaintiff alleges four incidents of excessive force in this action: (1) the alleged incident where he was pepper sprayed by Unknown Paine when he purportedly was undergoing a medical emergency (having a panic attack) while being escorted to Housing Unit 1; (2) the alleged incident where plaintiff was handcuffed and tethered in the suicide cell and Unknown Dean allegedly pepper sprayed him; (3) the incident inside the suicide cell when plaintiff was allegedly hit and held down by defendants Perry Arnold, Unknown Paine, Colean Upton, Unknown Montgomery and Unknown Dean while he was handcuffed; and (4) the incident inside the suicide cell when plaintiff purportedly attempted to place his handcuffed hands inside the food port and Ms. Unknown Williams bent his finger back and attempted to break his finger.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also*

---

[2]Although plaintiff lists a badge number for Unknown Defendant, he has not provided any identifying information in the complaint for this defendant such as what this alleged defendant did to purportedly violate his rights or when the alleged violation occurred.

*Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017).

Here, plaintiff plausibly alleges that defendants Perry Arnold, Unknown Paine, Colean Upton, Mr. Unknown Montgomery, Unknown Dean and Ms. Unknown Williams used excessive physical force against him, including pepper spraying him, punching him, holding him down and against the wall while unlawfully utilizing force, assaulting him (including attempting to break his finger), all while he was handcuffed. The Court finds that plaintiff has alleged enough facts in his complaint to survive initial review as to his claims for excessive force in violation of the Eighth Amendment against defendants in their individual capacities. Accordingly, the Court will issue process on these claims.

### 4. Plaintiff's Retaliation Claims

The Court notes that plaintiff has also asserted that defendants' actions - Perry Arnold, Unknown Paine, Colean Upton, Mr. Unknown Montgomery, Unknown Dean and Ms. Unknown Williams - were retaliatory because he was engaged as a jailhouse lawyer for his prior cellmate, Dustin Combs. This is a somewhat novel argument. There is no doubt that if plaintiff was filing grievances and lawsuits for himself, he would be protected from retaliation under the First Amendment. The question is whether the law also provides plaintiff protection for filing grievances and lawsuits on behalf of others at the prison.

11

The Supreme Court has "maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "In the First Amendment context, [ ] some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Thus, the Court has "sustained proscriptions o[n] media interviews with individual inmates, prohibitions on the activities of a prisoners' labor union, and restrictions on inmate-to-inmate written correspondence." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 93 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 139 (1977); *Pell*, 417 U.S. at 89). On the other hand, the "Court has determined that incarceration does not divest prisoners of all constitutional protections [and] [i]nmates retain ... certain protections of the First Amendment." *Id.* at 228–229.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. In determining the reasonableness of a prison regulation that limits a constitutional right, courts consider whether: (1) there is a valid, rational connection between the prison regulation and the legitimate, neutral governmental interest put forward to justify it; (2) there are alternative means of exercising the right that remain open to prison inmates; (3) there is an impact on prison guards or other inmates in accommodating the asserted constitutional right; and (4) there are alternatives to the regulation that do not impinge on the constitutional right. *Id.* at 89–91. Although the Supreme Court has declined to provide jailhouse lawyering with "any First Amendment protection above and beyond the protection normally accorded prisoners' speech," a prohibition on jailhouse lawyering would be evaluated under the test set out in *Turner*. *Shaw*, 532 U.S. at 232.

12

Some circuits have held that jailhouse lawyering may be protected First Amendment conduct. The Sixth Circuit has held that providing legal assistance to other inmates is protected First Amendment conduct where such "assistance [i]s necessary for other inmates to access the courts." *Berkshire v. Beauvais*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (reasoning that "a jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts"))).

The Eleventh Circuit has held that some "instance[s] of prison writ writing can be said to lie at the core of First Amendment protected activities," "even if they are undertaken on behalf of others." *Adams v. James*, 784 F.2d 1077, 1082–83 (11th Cir. 1986). Further, the Eleventh Circuit noted that "[a] properly stated First Amendment claim by an inmate does not fail simply because the allegedly protected activities were conducted on behalf of others[;] ... the right of free expression is cherished for its force as an agent of social change and not only as a right of self-interested individuals." *Id.* at 1081.

Similarly, the Second Circuit has held that "retaliation against a prisoner for filing or voicing grievances on behalf of a prison population as a member of an inmate grievance body ... violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citing *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)).

Although the Fourth Circuit has not addressed the issue of retaliation against jailhouse lawyers, it "has long held that prison officials may not retaliate against prisoners for exercising their right to access the courts, which is a component of the right to petition for redress of

13

grievances." *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 544 (4th Cir. 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978)).

In *Booker v. S.C. Dep't of Corr.,* the Fourth Circuit held that "an inmate's First Amendment right to be free from retaliation for filing a grievance was clearly established." 855 F.3d at 546. The court recognized its earlier decision in *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), in which it concluded that an inmate does not have a constitutional right to a grievance procedure. Nevertheless, the court explained that "*Adams* is entirely silent on ... whether an inmate's First Amendment right is violated when he is retaliated against for submitting a grievance pursuant to an existing grievance procedure." *Booker*, 855 F.3d at 541. "That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution." *Id.*

For the purposes of preservice review, the Court will adopt the reasoning set forth in *Booker*. That a prison is not required under the Constitution to allow an inmate to be a jailhouse lawyer "does not mean that prison officials who retaliate against inmates for [jailhouse lawyering] ... do not violate the Constitution." *Id*. In other words, even if an inmate does not have an independent constitutional right to provide legal assistance to fellow inmates, the provision of legal assistance may still be protected First Amendment conduct in certain circumstances. *Booker*, 855 F.3d at 541.

Plaintiff argues that he assisted his prior cellmate, Dustin Combs, in submitting a lawsuit to this Court in 2022, as well as in submitting IRRs, Grievances, Grievance Responses and Grievances Appeals. For the purposes of the complaint, plaintiff has alleged enough to set forth a retaliation claim against defendants Perry Arnold, Unknown Paine, Colean Upton, Mr. Unknown

14

Montgomery, Unknown Dean and Ms. Unknown Williams. The Court will issue process on this claim against defendants in their individual capacities.

**5. Plaintiff's Failure to Protect Claims**

Plaintiff asserts in a conclusory manner that defendants Unknown Paine, Unknown Montgomery and Unknown Dean should be liable for failing to protect him from himself because these individuals allegedly walked away from him while he was on suicide watch and on a tether in his suicide watch cell.

Prisoners have a "clearly established constitutional right to be protected from the known risks of suicide and to have [their] serious medical needs attended to." *Yellow Horse v. Pennington Cty.,* 225 F.3d 923, 927 (8th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)). The Eighth Amendment prohibits jail officials from acting with deliberate indifference towards risks of suicide. *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003) (citing *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)).

The Eighth Circuit establishes that "[w]hether an official was deliberately indifferent requires both an objective and a subjective analysis." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (citing *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014)). To prevail on a deliberate indifference claim, plaintiff must allege that (1) defendants had actual knowledge that plaintiff had a substantial risk of suicide and (2) defendants failed to take reasonable measures to abate that risk. *Coleman*, 349 F.3d at 538.

The complaint contains a legal conclusion that defendants were deliberately indifferent, but it fails to make any allegation about defendants' actual knowledge that he was suicidal. In other words, plaintiff does not allege that he was suicidal or that defendants believed him to be suicidal. Plaintiffs' conclusory statements that defendants failed to protect him from his purported suicidal

tendencies does not save the complaint absent any allegation of knowledge. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, plaintiff's failure to protect claims against defendants are subject to dismissal.

### 6. Plaintiff's Due Process Claims Relating to Administrative Segregation and Against Lindsey Ramsay

In the complaint, plaintiff takes issue with the fact that he was given CDVs for violating Missouri Department of Correction Rules 11.5 and 19.4. He claims that his placement in Administrative Segregation for these CDVs was a violation of his due process rights.

The determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

As life or property is not involved in this case, plaintiff must demonstrate that a liberty interest is at stake. "Protected liberty interests may arise from two sources – the Due Process Clause itself and the laws of the States." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). "The Due Process Clause standing alone confers no liberty interest in freedom

from state action taken within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995). However, a liberty interest inherent in the Due Process Clause arises when a person has a substantial – although conditional – freedom, such as when he is on probation or parole. *Edwards v. Lockhart*, 908 F.2d 299, 301 (8th Cir. 1990). The "dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest…is the fact of release from incarceration." *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996). A state-created liberty interest arises when an inmate's conditions of confinement impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, in order to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002). Plaintiff has failed to show that his placement in Administrative Segregation imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. As such, he has not shown a violation of his due process rights. His claim against Lindsey Ramsey, and any claims relating to his placement in Ad-Seg, are subject to dismissal.

**Motion for Injunctive Relief**

### A. Facts Relative to Motion

Plaintiff filed a motion for temporary restraining order on April 11, 2024. [ECF No. 6]. In the motion, plaintiff asserts that he was given an Ad-Seg Hearing on April 2, 2024, in front of Lieutenant Unknown Varner, Functional Unit Manager Carl Miller, Case Manager Benjamin Dement, Correctional Officer Colean Upton and Lieutenant Unknown Richardson. *Id*. at 1-2. Upton is a defendant in the present action. Plaintiff states that Dement is a defendant in another

17

action currently pending in this Court, *Shattuck v. Missouri Dept. of Corr.,* No. 4:24-CV-00454 HEA (E.D.Mo.).

Plaintiff asserts that at his Ad-Seg hearing, he "voiced protective custody needs" that he alleges he previously made aware to the Missouri Department of Corrections, as well as to this Court in *Shattuck v. Missouri Dept. of Corr.,* No. 4:24-CV-00454 HEA (E.D.Mo.). [ECF No. 6, pp. 1-2]. Despite plaintiff's request for protective custody, he claims that Dement falsely wrote on the Classification Hearing Form, "Give me a celly or put me in the PRU program."[3] *Id*. at 2. When plaintiff allegedly noted the falsification, Carl Miller said, "You [are] not going to our PC Unit. You killed a WWII veteran. You deserve whatever you get." *Id*. Plaintiff states that Upton said, "You think it's funny filing lawsuits on CO's? You can go to the PRU and spend the rest of your life in a one-man cell or the next celly you get is going to be like Driskill only this time we're going to make sure they kill you before they fuck you." *Id*. At this point, Richardson allegedly said to plaintiff, "You're in the room with some real vindictive mother fuckers." *Id*. Plaintiff alleges he signed the Ad-Seg form out of fear, and he then turned in the PRU application to CCM Hammond later that day, also out of fear. *Id.*

Plaintiff has attached an Exhibit to his motion for temporary restraining order indicating that in October of 2023, he claimed to be a victim of a rape by inmate Jesse Driskill. *Id.* at 17. According to plaintiff, staff at PCC had plaintiff stabbed and raped by Driskill because of the filing of prior lawsuits. *Id.* at 3.[4] Plaintiff does not indicate what evidence he has relating to his claim.

---

[3] Plaintiff does not explain the meaning of "PRU."

[4] Plaintiff did not file the instant lawsuit until March 4, 2024, and he filed *Shattuck v. Missouri Dept. of Corr.,* No. 4:24-CV-00454 HEA (E.D.Mo.) on that same date. His prior lawsuits in this Court were filed in 2018 and 2019. *See Shattuck-Knaebel v. Lewis, et al.,* No. 1:18-CV-00212 CAS (E.D.Mo.2019) and *Shattuck-Knaebel v. Leija, et al*., No. 1:19-CV-0021 AGF (E.D.Mo. 2019). Thus, they are not related in temporal proximity to the alleged attack on plaintiff by Driskill.

Plaintiff claims that staff is refusing to allow him access to the Protective Custody Unit at PCC. Although he acknowledges that he currently has two enemies in the Protective Custody Unit at PCC, he still argues that he should be admitted to the Protective Custody Unit. *Id*. at 3-4. Plaintiff asserts, without providing evidence, that one of his enemies has already signed a waiver stating that plaintiff can be allowed into the Protective Custody Unit. He then argues in a conclusory manner that unnamed staff at PCC will not allow plaintiff to submit a waiver regarding the other enemy. *Id* at 4. Plaintiff does not indicate if the last alleged enemy in the Protective Custody Unit has been contacted about waiving plaintiff's entrance into the unit.

In his request for relief, plaintiff seeks another Ad-Seg hearing as soon as possible so that he may request Protective Custody. He states that he wants to know how many enemies he now has in the Protective Custody Unit at PCC. Plaintiff also asks for an Order from this Court to bar any defendants in this action, or defendants in his other case in this Court, from participating in his Ad-Seg Hearing.

### B. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

"None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).[5]

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id*. at 521. Furthermore, the "danger must be more than a mere possibility." *Id*.  Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id*. Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

**C. Discussion**

Plaintiff's motion for preliminary injunctive relief fails because the substance of the motion is not related to the claims in his complaint. As such, the Court cannot grant the motion. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); and *Hale v. Wood*, 89 F.3d 840, 1996 WL

---

[5]The same standards are applied to both a request for a preliminary injunction and a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive relief because he "failed to establish a connection between these injuries and the conduct he challenged in his complaint").

This lawsuit pertains to excessive force and retaliation allegations by plaintiff which occurred in August of 2022. There are no allegations in this action relating to a request to Protective Custody by plaintiff or regarding a denial of Protective Custody at PCC. In fact, only one of the defendants in this lawsuit is alleged to be on the Classification Review Hearing Committee that purportedly barred plaintiff from going to Protective Custody in April of 2024, defendant Colean Upton.

Plaintiff acknowledges that he has at least one or two enemies in the Protective Custody Unit at PCC, and he is therefore unable to enter the Protective Custody Unit at PCC as a result. Although plaintiff is willing to waive those enemies, there is no indication or evidence that plaintiff's current enemies in the Protective Custody Unit are willing to waive plaintiff's entrance into the PC Unit with them.

Last, the Court notes that plaintiff's motion for temporary restraining order is asking this Court to sit in review of decisions made by defendants regarding discipline and appropriate housing assignments, based on a desire to maintain safety and security at PCC. Although prisoners retain their constitutional rights, there are limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 982 (8th Cir. 2004). A prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*; *see also Sandin*, 515 U.S. at 482 (stating that "federal courts ought to

afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment."); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (stating that "prison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))).

Despite plaintiff's assertions that defendants have denied his requests for the Protective Custody Unit based on their spitefulness, evidence provided by plaintiff in his own exhibits demonstrates that plaintiff has numerous enemies and that he has been involved in several altercations and rapes of other inmates. Plaintiff's allegations regarding defendants are speculative and insufficient to draw the inference that defendants had any hidden animus behind their housing assignment decisions. *See Iqbal*, 556 U.S. at 678 (finding that a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court is unpersuaded that the Classification Hearing Review team are attempting to maintain a safe facility.

The Court therefore, declines to grant plaintiff the immediate request for a new Classification Hearing or order officials at PCC to provide plaintiff with new documents showing the current number of enemies in the Protective Custody Unit. His motion for temporary restraining order is denied.

**Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. [ECF No. 4]. In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel

22

appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

In this case, there is no indication that plaintiff is incapable of representing himself, and nothing in the instant complaint or in the record before the Court evidence that the factual or legal issues are sufficiently complex to justify the appointment of counsel. Moreover, the several remaining defendants have yet to be served with process and discovery has not begun, so there is no conflicting testimony. However, recognizing that circumstances may change, the Court will deny the motion for appointment of counsel without prejudice, and will entertain future such motions, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall update the docket to reflect defendant Upton's name full name, Colean Upton.

**IT IS FURTHER ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the date of this Memorandum and Order, plaintiff must pay an initial partial filing fee of $43.07. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include

23

upon it: (1) his name; (2) his jail registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED at this time**.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants brought pursuant to 42 U.S.C. § 1983, are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims against defendants Jason Lewis, Unknown Badge #36308, John Doe Defendants, Lindsey Ramsey and Brian Davis, brought pursuant to 42 U.S.C. § 1983, are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to plaintiff's claims of excessive force in violation of the Eighth Amendment: Perry Arnold, Unknown Paine, Colean Upton, Mr. Unknown Montgomery, Unknown Dean and Ms. Unknown Williams. These defendants shall be served in their individual capacities.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to plaintiff's claims of First Amendment retaliation: Perry Arnold, Unknown Paine, Colean Upton, Mr. Unknown Montgomery, Unknown Dean and Ms. Unknown Williams. These defendants shall be served in their individual capacities.

**IT IS FURTHER ORDERED** that plaintiff's request for temporary restraining order [ECF No. 6] is **DENIED without prejudice**.

24

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

A separate Order of Partial Dismissal will be filed herewith.

Dated this 3rd day of July, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE